# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK[1], HAIGHT, and PENLAND
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Staff Sergeant PAUL S. TALAR**
**United States Army, Appellant**

ARMY 20130603

Headquarters, Fort Bragg
Tara Osborn, Military Judge (arraignment)
Kirsten Brunson, Military Judge (pretrial motions and trial)
Colonel Paul S. Wilson, Staff Judge Advocate

For Appellant: Captain Payum Doroodian, JA (argued); Colonel Kevin Boyle, JA; Major Yolanda McCray Jones, JA; Captain Payum Doroodian, JA (on brief); Major Amy E. Nieman, JA; Captain Payum Doroodian, JA (on brief on supplemental assignment of error).

For Appellee: Captain Robyn M. Chatwood, JA (argued); Major A.G. Courie III, JA; Major John K. Choike, JA; Major Matthew T. Grady, JA (on brief).


24 August 2015

---------------------------------
OPINION OF THE COURT
---------------------------------

HAIGHT, Judge:

A panel composed of officers and enlisted members sitting as a general court-martial convicted appellant, contrary to his pleas, of false official statement, abusive sexual contact, and bigamy, in violation of Articles 107, 120, and 134, Uniform Code of Military Justice [hereinafter UCMJ], 10 U.S.C. §§ 907, 920, and 934 (2006 & Supp. IV).[2]  The panel sentenced appellant to a dishonorable discharge, two years

---

[1] Senior Judge COOK took final action in this case prior to his retirement.

[2] The panel acquitted appellant of a specification of rape.

of confinement, forfeiture of all pay and allowances, and reduction to the grade of E-1.  The convening authority approved the adjudged sentence.

Appellant's case is now pending review before this court pursuant to Article 66, UCMJ.  Appellant raises multiple assignments of error, one of which merits discussion and relief.  The other assignments of error and the issues personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), are either rendered moot by our disposition of this case or do not warrant discussion or relief.

## BACKGROUND

Appellant married his first wife, TJC, in November 1992.  Appellant married his second wife, AO, in February 2001, while still married to TJC.  Appellant married his third wife, SMG, in July 2010, while still married to TJC and still in a void, bigamous marriage to AO.

After a fully contested trial, appellant was acquitted of raping AO in 2003 but convicted of engaging in sexual contact with SMG in 2011 while she was substantially incapacitated, committing bigamy by marrying SMG in 2010 while still married to TJC, and making a false official statement in 2010 by submitting from Afghanistan an altered marriage certificate for input to the Defense Enrollment Eligibility Reporting System (DEERS).  Appellant asserts the finding of guilty to the false official statement charge should be set aside because the evidence used to prove that offense violated his confrontation rights under the Sixth Amendment.  We agree.

## DISCUSSION

The false official statement charge was based upon the fact that appellant's digital military personnel file contained a Tennessee Marriage Certificate indicating appellant and SMG were married on 29 July 2010.  Actually, the two were married twelve days prior, on 17 July 2010.  However, as appellant and AO, his second wife, were not divorced until 29 July 2010, the government's theory was that appellant altered the date in order to submit the marriage certificate pertaining to SMG and thereby qualify her and her child for military benefits without raising any red flags regarding his bigamy.[3]  The preferred and referred specification alleged:

---

[3] Apparently, appellant's first wife, TJC, was never enrolled in DEERS. Accordingly, an overlapping marriage with TJC would not create a conflict in appellant's records whereas an overlapping marriage with AO, who was enrolled in

(continued . . .)

> In that Staff Sergeant (E-6) Paul S. Talar, U.S. Army, did, at or near Fort Bragg, North Carolina, between on or about 1 August 2010 and on or about 30 November 2010, with intent to deceive, make an official statement, to wit: State of Tennessee Marriage Certificate dated 29 July 2010 between Paul Steven Talar and [SMG], which record was false in that the date of marriage was 17 July 2010, and was then known by the said Staff Sergeant Paul S. Talar to be so false.

The defense prepared for trial and planned on showing that appellant could not possibly have submitted the falsified document at Fort Bragg, North Carolina, as charged, because appellant was deployed to Afghanistan during that time frame. In that same vein, the government's continued investigation and pretrial preparation revealed that the altered document was, in fact, scanned into the system on 18 September 2010 by a Human Resources Specialist, JP, who was working at the DEERS and ID card section in Bagram, Afghanistan, at that time. So, two weeks before trial, the government moved to amend the location of this offense from "at or near Fort Bragg, North Carolina" to "at or near Bagram, Afghanistan." Predictably, the government asserted this was a minor change, and the defense claimed this was a prejudicial major change. The military judge agreed with the government and granted the motion to amend.

At trial, it was plainly evident that the government's case regarding the false official statement depended on showing that appellant submitted a falsified document to JP, while they were both in Afghanistan, so that JP would then add that document to the DEERS database via the Real-time Automated Personnel Identification System (RAPIDS). In fact, in response to defense's Rule for Courts-Martial [hereinafter R.C.M.] 917 motion for a finding of not guilty and the military judge's request for legal authority for the "proposition that submitting a false document constitutes making a statement," the trial counsel responded:

> Your Honor, in addition to the gesture of handing it to [JP], he still caused an agent to do that who [sic] actually uploaded this document. There's certainly circumstantial evidence that it was handed to [JP], who then scanned a document and uploaded it -- caused it to be uploaded.

---

(. . . continued)
DEERS, would indicate bigamy and consequently disqualify SMG from military benefits.

The military judge then explicitly found that appellant could have "made" a false official statement by "submitting a false marriage certificate."

The error in this case boils down to the fact that there was no admissible so-called "circumstantial evidence" that appellant submitted anything to JP, let alone this altered marriage certificate. To the contrary, JP was never asked if he recognized appellant or remembered any interaction whatsoever with appellant, in Afghanistan or otherwise. Instead, JP merely testified to the fact that he was in Afghanistan in September 2010 and that uploading documents such as marriage certificates into DEERS was part of his assigned duties. Therefore, to fill the absence of proof regarding any connection between JP and appellant, the government offered a "Certification of Records Declaration," authored by CV, "a duly authorized custodian of records and qualified person of the Defense Manpower Data Center (DMDC)."

The typical certificate created pursuant to Military Rule of Evidence [hereinafter Mil. R. Evid.] 902(11) ("Certified domestic records of regularly conducted activity") simply certifies a record "(A) was made at or near the time of the occurrence of the matters set forth by, or from information transmitted by, a person with knowledge of those matters; (B) was kept in the course of the regularly conducted activity; and (C) was made by the regularly conducted activity as a regular practice." Here, on the other hand the one and a half-page affidavit of CV, purporting to be a mere certificate of records, went well beyond the allowable declarations and provided material and damning evidence against appellant. Specifically, CV swears under penalty of perjury:

> I have conducted a thorough search of the records within my custody and control and located Marriage Certificates from the State of Tennessee (County of Sevier) for Staff Sergeant (SSG) Paul S. Talar, USA and Ms. [SMG] (formerly Talar). I also located the first page of a Judgment of Dissolution of Marriage from the Jackson County Circuit Court of the State of Oregon between SSG Talar and Ms. [AO].
>
> *The DMDC auditing application reflects on September 18, 2010, Mr. [JP] at the 510th PSD (CAC Deployable), Germany terminated Ms. Talar's record to divorce and enrolled Ms. [SMG] under the sponsorship of SSG Talar. During these transactions, Mr. [JP] scanned a marriage certificate (attachment 1) and divorce decree (attachment 3) into RAPIDS.* On November 8, 2010, Ms. [EL] at the Fort Bragg IAG ID Card Facility, North Carolina enrolled [TCL], Ms. [SMG]'s child, under the sponsorship of SSG

4

Talar as his stepchild.  Ms. [EL] scanned a marriage
certificate (attachment 2) into RAPIDS. . . .

(emphasis added).  Ms. CV was never called to the stand and was never subject to
cross-examination.  However, her critical testimony, in the form of her records
certification, linking the questionable marriage certificate to JP, which in turn linked
the document to Afghanistan, which in turn linked the document to appellant, was
not only admitted into evidence over defense objection, but the above portion of the
certificate was then read to the panel verbatim by a government witness, Ms. NF, an
employee of the local Fort Bragg ID office.

When this expected testimony, disguised as a records certification, was
offered, the defense objected not to the underlying attachments but to the cover
letter/certification on grounds of hearsay, lack of foundation, and introduction of
testimonial hearsay via an inappropriate witness.  Initially, the military judge
agreed, stating "you've got a certification that's providing testimony other than
simply these are the records that were found."  The military judge continued:

I see testimonial information in the certification of records
declaration.  It appears to be -- and I'll hear your
argument -- it appears to be more than simply a statement
from the custodian of these records are contained within
the system; it goes a little further than that, and is
responding specifically to questions about when -- you
know, who did what, when, where and why.  Again, I
understand you're saying that that's -- everything that
shows in the system, but I'm questioning that.  It seems to
me that a search of the records -- I'm wondering why a
search of the records in DEERS wouldn't simply show
that, for example, Staff Sergeant Talar has one dependent
child entered on this date.  That he -- that a marriage was
recorded entered on this date, and I can print off the
documents that support that.

In response, trial counsel explained that while both Ms. CV, a DMDC employee, and
Ms. NF, a local DEERS employee, can both view the underlying documents from
their respective computers, only DMDC employees have access to and "can see" to
whom and from where the underlying documents were submitted and uploaded.
Ultimately, the military judge relented and allowed the "records certification."  This
was error.

We determine that allowing a records custodian to swear to and certify
information as to what her databases "reflect" without calling that custodian to the
stand and without introducing the actual data, screen shot, print-out, or record which

TALAR—ARMY 20130603

"reflects" the relevant information implicates not only confrontation problems, but hearsay and best evidence hurdles as well.[4] To be clear, the attachments to the records certification, specifically the marriage certificate, do not contain any markings or indication of any sort showing to which DEERS employee they were submitted, when they were submitted, or from where they were uploaded into the system. In other words, the authentication certificate, not the attached documents, was the evidence which provided the prosecution the crucial link between appellant and JP.

This very scenario was discussed in *Melendez-Diaz v. Massachusetts* and ruled to be impermissible.

> The dissent identifies a single class of evidence which, though prepared for use at trial, was traditionally admissible: a clerk's certificate authenticating an official record--or a copy thereof--for use as evidence. But a clerk's authority in that regard was narrowly circumscribed. He was permitted to certify to the correctness of a copy of a record kept in his office, but had no authority to furnish, as evidence for the trial of a lawsuit, his interpretation of what the record contains or shows, or to certify to its substance or effect. . . . A clerk could by affidavit *authenticate* or provide a copy of an otherwise admissible record, but could not do what the analysts did here: *create* a record for the sole purpose of providing evidence against a defendant.

557 U.S. 305, 322-23 (2009) (internal citations and internal quotation marks omitted) (emphasis in original).

Accordingly, Ms. CV could authenticate the underlying documents over which she was a proper custodian. But, she could not create the cover letter for purposes of trial and therein provide testimony regarding her interpretation of whatever it is that she reviewed when conducting her "auditing application." Portions of the cover letter were not an appropriate certification of an underlying business record.

> Business and public records are generally admissible absent confrontation not because they qualify under an

---

[4] We emphasize this ruling in no way addresses the scenario contemplated in Mil. R. Evid. 803(10) where a review of pertinent databases reflects an absence of a record or entry.

> exception to the hearsay rules, but because--having been
> created for the administration of an entity's affairs and not
> for the purpose of establishing or proving some fact at
> trial--they are not testimonial. Whether or not they
> qualify as business or official records, the analysts'
> statements here--prepared specifically for use at
> petitioner's trial--were testimony against petitioner, and
> the analysts were subject to confrontation under the Sixth
> Amendment.

*Id*. at 324.

Because portions of Ms. CV's affidavit, as discussed, went beyond authentication of existing business records and into the realm of creating and providing testimony against appellant, those same portions which violated appellant's confrontation rights were also statements "offered in evidence to prove the truth of the matter asserted" and did not qualify under any exception to the hearsay prohibition. Mil. R. Evid. 801(c); *see also* Mil. R. Evid. 803(6). Similarly, without the benefit of being able to view whatever screen, data field, or record that Ms. CV viewed in order to create her testimonial affidavit, the panel was deprived of the best evidence of the contents of that writing – that is, the writing itself.

## CONCLUSION

The military judge abused her discretion in admitting the portions of Ms. CV's records certification that went beyond the required declarations of Mil. R. Evid. 902(11). As this evidence was crucial to the government's case regarding the false official statement charge, especially so in light of the allowed change to the situs of this offense, this error was not harmless by any standard. The findings of guilty to Charge IV and its Specification are set aside and that charge and specification are DISMISSED.

The remaining findings of guilty are AFFIRMED.

We are able to reassess the sentence on the basis of the error noted and do so after conducting a thorough analysis of the totality of circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013) and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986). In evaluating the *Winckelmann* factors, we first find no dramatic change in the penalty landscape that might cause us pause in reassessing appellant's sentence. Further, although appellant was tried and sentenced by a panel, the nature of the remaining offenses still captures the gravamen of the original offenses and the circumstances surrounding appellant's conduct. Finally, based on our experience, we are familiar with the remaining

7

offenses so that we may reliably determine what sentence would have been imposed at trial.

Reassessing the sentence based on the noted error, the remaining findings of guilty, and the requested relief by appellate defense counsel at oral argument, we AFFIRM only so much of the sentence as provides for a dishonorable discharge, eighteen months of confinement, and reduction to the grade of E-1. We find this reassessed sentence is not only purged of any error but is also appropriate. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings and sentence set aside by our decision, are ordered restored. *See* UCMJ arts. 58b(c) and 75(a).

Senior Judge COOK and Judge PENLAND concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court